# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### SEPTEMBER 1999 SESSION

**FILED**

October 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **DANIEL LeMAY SANDERS,** | ) | |
| | ) | **C.C.A. NO. 01C01-9712-CC-00586** |
| Appellant, | ) | |
| | ) | **ROBERTSON COUNTY** |
| VS. | ) | |
| | ) | **HON. ROBERT W. WEDEMEYER,** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

FOR THE APPELLANT:                FOR THE APPELLEE:


**GREGORY D. SMITH**                **PAUL G. SUMMERS**
One Public Square, Suite 121        Attorney General & Reporter
Clarksville, TN 37040

                                **GEORGIA BLYTHE FELNER**
                                Asst. Attorney General
                                John Sevier Bldg.
                                425 Fifth Ave., North
                                Nashville, TN  37243-0493


                                **JOHN W. CARNEY**
                                District Attorney General


                                **DENT MORRISS**
                                Asst. District Attorney General
                                500 South Main St.
                                Springfield, TN 37172


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

**O P I N I O N**

Pursuant to plea negotiations, the petitioner pled guilty to first-degree murder and received an agreed sentence of life without parole. He timely filed a petition for post-conviction relief, arguing that his plea was unknowing and involuntary due to the ineffective assistance of trial counsel. After a hearing, the post-conviction court found that the petitioner received effective assistance of counsel and that his plea was knowingly and voluntarily entered. The petitioner now appeals. Finding no merit to his argument, we affirm the post-conviction court's order.

The petitioner maintains that his trial attorneys gave him incorrect information and "bad advice" about his case. At the post-conviction hearing, the petitioner, who potentially faced the death penalty if convicted at trial, testified that his attorneys advised him that the punishment of life without parole, the sentence to which he agreed, might still allow him the opportunity for parole in ten or fifteen years because the laws were always changing and prisons were overcrowded. He also testified that he believed he would be executed immediately following trial, even though (as he later discovered) the electric chair had not been used for decades. According to the petitioner, he felt pressured by circumstance and by his attorneys into accepting the plea offer.

On nearly every point, the testimony of the petitioner's trial attorneys contradicted the petitioner's testimony. Both attorneys denied advising the petitioner that there was any real possibility he could eventually receive parole with a life-without-parole sentence. Both attorneys also denied advising the petitioner that he would be executed immediately upon a jury's finding of guilt. According to them, they advised the petitioner about the appellate process, and they tended to agree with the petitioner's view that even if he received the death penalty he would likely never be executed, but they also warned him that there was a tremendous difference in the nature of incarceration for death row

2

inmates and for the general prison population. The post-conviction court specifically discredited the petitioner's testimony and found he was given "the best representation he could get." Because the evidence does not preponderate against these findings, the court's findings preclude the relief petitioner seeks. See State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981)(factual findings of trial court have the weight of a jury verdict and will not be set aside unless the evidence preponderates against them).

The evidence shows that the petitioner placed significance on family visitation in prison and that visitation while on death row was much more limited than general incarceration. The petitioner expressed that accepting the plea agreement was his "only way out" to avoid the electric chair because his grandmother was on her death bed at the time he was considering the plea offer. He also stated that his attorneys pressured him into accepting the plea by telling him he "didn't stand a chance" at trial because his codefendant would be testifying against him. The attorneys testified that the case against the defendant was very strong and that it was in the petitioner's best interest to enter a plea agreement. Despite this, they indicated that if the petitioner chose to proceed to trial, they were ready. After considering the evidence, the post-conviction court determined that there was "not one speck of evidence" to support allowing the petitioner to withdraw his guilty plea.[1] We agree. See Tate, 615 S.W.2d at 162. The post-conviction court's order is affirmed.

_____
JOHN H. PEAY, Judge

---

[1]At the conclusion of his findings, the post-conviction court judge also stated, "I apologize to the Appeals Court for rambling on and on . . . ." Apology accepted.

CONCUR:


_____
DAVID H. WELLES, Judge


_____
JOHN EVERETT WILLIAMS, Judge